UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re:

PJC TECHNOLOGIES, INC.,
(d/b/a Metro Circuits and
d/b/a Speedy Circuits),

                    Debtor.

CASE NO. 09-22733

CHAPTER 11

DECISION & ORDER

---

PJC TECHNOLOGIES, INC.,

                      Plaintiff,

       V.

C3 CAPITAL PARTNERS, LP,

                      Defendant.

AP #09-2119

---

After reading the pleadings and hearing oral argument, the Court denies the request of PJC Technologies, Inc. (the "Debtor"), for a preliminary injunction in Adversary Proceeding No. 09-2119 (the "Adversary Proceeding"), wherein it has requested that the Court stay the January 29, 2010 secured creditor's UCC sale (the "Sale") by C3 Capital Partners, LP ("C3") of the stock, which constitutes 100% of the issued and outstanding stock in the Debtor (the "Stock"), owned by the Peter J. Casson Declaration of Trust (the "Trust"), for the following reasons:

BK. 09-22733
AP. 09-2119

1. The scheduled Sale of the Stock, which is owned by the Trust, as opposed to treasury stock, which would be owned by the Debtor and would be an asset of the estate, would not be a violation of the automatic stay provided for by Section 362, as asserted in the complaint in the Adversary Proceeding, particularly, Section 362(a)(1), since it would not be an act against the Debtor, as specifically required by Section 362(a)(1);

2. The Debtor has not met its burden to demonstrate that, under Section 105(a), in the Court's discretion, it is entitled to a preliminary injunction, for the following reasons:

   a. It has failed to demonstrate, to this Court's satisfaction, that there is sufficient certainty that the Sale will result in imminent, irreparable harm to the Debtor, or to its reorganization efforts, or that there is a reasonable likelihood that the Debtor can successfully reorganize pursuant to its filed plan (the "Plan"), because:

      i. Although the Sale of the Stock will result in a change in control of the Debtor, which is a default

under the post-petition financing agreements between the Debtor and Marquette Business Credit, Inc. ("Marquette"), Marquette has indicated that, without prejudice to its rights, it will not automatically call the default and terminate its post-petition financing;

ii. C3 has indicated that, if the Sale does not result in the full payment of its indebtedness and Marquette elects to terminate the post-petition financing, C3 will provide post-petition financing on the same terms as provided by Marquette, and there is no evidence or allegations that it is not capable of providing such financing;

iii. There is no direct evidence that, if C3 or an affiliate purchases the Stock, or if any third party purchases the Stock, that the purchaser will remove the President and CEO, Peter Casson ("Casson"), or that if Casson is removed, the Debtor will not be able to operate, succeed and reorganize. If the Debtor cannot operate and reorganize without Casson, in this Court's opinion,

        it is not properly structured and staffed, which can only be the fault of Casson;

iv. If C3 or an affiliate is the successful purchaser of the Stock, unless the price results in the full satisfaction of its debt, then C3 remains a creditor and C3 will be placed in a very obvious conflict of interest, which the Court will carefully scrutinize, and which C3 is no doubt aware of;

v. There is no evidence that the Sale of the Stock will result in the loss of any of the rights and remedies that the creditors of the Debtor have in the pending Chapter 11 case, or that a purchaser of the Stock would not want to successfully reorganize the Debtor in the pending Chapter 11 case;

vi. In summary, all the irreparable harm alleged by the Debtor is speculative; and

vii. Although the Debtor alleges that its filed Chapter 11 Plan is confirmable and provides for the full

**Page 4**

        payment of the indebtedness of all the creditors, including C3, this Court, at this early stage of the Plan confirmation process, would not be inclined, under Section 1129, to confirm a plan, even if it proposed to pay C3 in full and was otherwise feasible, if it resulted in C3 losing its security interest in the Stock before it received full payment;

b. Depriving C3 of its contractual rights against a third party, which does not directly harm the Debtor, when any alleged harm to the Debtor is speculative, cannot result in a finding by this Court that the balance of the harm and equities tips in favor of the Debtor; and

c. Certainly there is great public interest in the Bankruptcy System encouraging and facilitating eligible entities reorganizing in Chapter 11, but there is also important public interest in enforcing contracts when they are between third parties and do not sufficiently harm a debtor and its reorganization efforts, as the Court believes is the case here. Otherwise, parties will

BK. 09-22733
AP. 09-2119

      not have the necessary certainty and predictability they require in commercial transactions.

3. Additionally, the Debtor may have been able to better protect itself from the very situation it now finds itself in. The Debtor had previously entered into agreements with C3 that provided C3 with the opportunity to exercise the rights it now seeks to enforce. Also, shortly before the filing of its petition, the Debtor was negotiating with C3 for additional financing, where, once again, C3's equity stake in the Debtor was at issue. Notwithstanding those negotiations, the Debtor chose to file for bankruptcy before securing the proposed financing with C3, and chose to enter into post-petition financing with Marquette, under which, the Sale constitutes a default.

**IT IS SO ORDERED.**

_____
HON. JOHN C. NINFO, II
U.S. BANKRUPTCY JUDGE

Dated: January 20, 2010



FILED
JAN 20 2010
BANKRUPTCY COURT
ROCHESTER, NY

Page 6